UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DONALD P. EMERY, et al.,

                Plaintiffs,

v.

PIERCE COUNTY, a political corporation located in the State of Washington, et al.,

                Defendants.

CASE NO. C08-5282BHS

ORDER GRANTING DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendants' Second Motion for Summary Judgment ("Second Motion") (Dkt. 101). The Court has considered the pleadings filed in support of, and in opposition to, the motion and the remainder of the file. For the reasons set forth below, the Court hereby grants the Second Motion in favor of the Defendants.

## I. PROCEDURAL HISTORY

On May 7, 2008, Plaintiffs filed their original complaint in Thurston County Superior Court. Dkt. 1, Ex. A. On the same day, Defendants removed this case to federal court. Dkt. 1. On November 30, 2009, Plaintiffs filed an Amended Complaint,

1  in which they asserted nine claims against Defendants.[1]  Dkt. 48.  On December 22,

2  2009, Defendants moved for summary judgment on all nine claims ("First Motion").

3  Dkt. 53.  After reviewing Plaintiffs' response to the First Motion, and Defendants' reply,

4  on February 9, 2010, the Court granted the First Motion in Defendants' favor, thereby

5  dismissing all claims.  Dkt. 83.  On February 19, 2010, Plaintiffs filed a motion for

6  reconsideration of the Court's ruling on the First Motion.  Dkt. 85.  After reviewing

7  Defendants' response, and Plaintiffs' reply, on April 5, 2010, the Court denied Plaintiffs'

8  motion for reconsideration.  Dkt. 90.

9         On May 4, 2010, Plaintiffs appealed this Court's ruling on the First Motion.  Dkt.

10  93.  On June 1, 2011, the Ninth Circuit affirmed the Court's ruling with respect to eight

11  of the nine claims.  Dkt. 96.  The only ruling that the Ninth Circuit did not affirm was this

12  Court's dismissal of Plaintiffs' inverse condemnation claim.  *Id.*  In remanding the claim,

13  the Ninth Circuit held that this Court erred when it ruled that Plaintiffs failed to exhaust

14  administrative remedies.  *Id.*  It held that because Plaintiffs had "sought, and ultimately

15  obtained, non-conforming use permits necessary to allow them to continue the non-

16  conforming uses of their property," they had pursued all remedies.  *Id.* at 3.

17

18

19

---

20      [1] The nine claims are listed as follows: (1) violations under 42 U.S.C. § 1983, et seq.;
21  (2) failure to train, supervise, or instruct; (3) negligence; (4) unreasonable search in violation of
    the Fourth Amendment of the United States Constitution; (5) inverse condemnation; (6) trespass;
    (7) interference with a business expectancy; (8) malicious prosecution; and (9) abuse of process.
22  Dkt. 48 at 11-16.

ORDER - 2

1   On August 16, 2011, Defendants filed their Second Motion, seeking to dismiss the

2   remaining inverse condemnation claim.  Dkt. 101.  On August 29, 2011, Plaintiffs

3   responded.  Dkt. 106.  On September 9, 2011, Defendants replied.  Dkt. 108.

4                           **II. FACTUAL BACKGROUND**

5         This matter involves allegations stemming from Plaintiffs' use and alleged misuse

6   of two parcels of property in Pierce County, Washington ("Property") that Plaintiffs

7   claim they have owned since 1915.  *See generally* Dkt. 1, Ex. A; Dkt. 48; Dkt. 106 at 2.

8   Plaintiffs claim they have utilized the parcels over the years for "timber production and

9   harvesting, farming, and trucking."  Dkt. 106 at 2.

10        In 1994, Pierce County adopted its Comprehensive Plan, thereby rezoning the

11   Property, effective January 1, 1995 ("1995 Ordinance").  Dkt. 66-5 at 14; Ord. #94-82s.

12   Sometime in early 2004, Pierce County Department of Planning and Land Services

13   ("PALS") learned of certain activities on the Property that PALS determined were

14   impacting the drainage paths and had the potential to cause runoff, erosion, and

15   sedimentation.  Dkt. 48, Exs. 1, 2.  During the ensuing investigation, PALS discovered

16   that Plaintiffs were operating a trucking business and contractor's yard on the Property,

17   which PALS deemed was in violation of the 1995 Ordinance.  *Id.*  In an effort to curb

18   these activities, starting in May 2004, PALS served Plaintiffs with several land use

19   correction notices/orders.  *Id.*  In 2004 alone, PALS issued five notices/orders concerning

20   the alleged violations.  *Id.*  The order(s) informed Plaintiffs that "noncompliance [with

21   the order] may result in . . . criminal charges." Dkt. 48, Ex. 1 at 10.

22

1    Plaintiffs responded that they would not comply with the notices, in part, because

2  the trucking business, Emery Worldwide Moving, Inc., was "grandfathered in" and not

3  impacted by the zoning change effected by the 1995 Ordinance.  Dkt. 54 at 24; Dkt. 106

4  at 2.  Because Plaintiffs failed to comply with the 1995 Ordinance, on May 10, 2005, the

5  Pierce County Prosecutor filed criminal charges against Donald Emery and Frances

6  Emery.  Dkt. 55 at 1-3.  At around the same time, Donald Emery quitclaimed his interest

7  in large portions of the Property to Frances Emery.  Dkt. 102 at 3-4; Dkt. 106-1 at 2.

8    A little more than a month after the criminal complaint—and more than a year

9  after PALS issued its first correction notice—on June 20, 2005, Donald Emery submitted

10  an application for non-conforming use for his trucking business.  Dkt. 66-5 at 14.

11  Notably, at the time that Mr. Emery applied for the non-conforming use permit, he was

12  continuing to operate Emery Worldwide Moving.  Dkt. 66 at 6-8.  Yet, before PALS

13  rendered a final decision on the non-conforming use application, Mr. Emery elected to

14  cease operations and relocate his trucking business.  Dkt. 66 at 8-9, 15.  PALS eventually

15  granted Mr. Emery the non-conforming use permit on February 17, 2006.

16    Mr. Emery now claims that he would not have relocated his business but for

17  certain representations made by a PALS intern, Rachael Couch.  Dkt. 106 at 6-7.

18  Specifically, Mr. Emery alleges that Ms. Couch told him that "his nonconforming use

19  permit application would be denied," which therefore prompted him to move his business

20  "to avoid any negative consequences in the criminal case, which was set for hearing in

21  February 2006."  Dkt. 106 at 6-7.  The Pierce County Prosecutor dropped the criminal

22  charges against Frances Emery on July 21, 2006, and against Donald Emery on April 4,

2007.  Dkt. 106 at 8.  Plaintiffs claim that the criminal charges destroyed their business ventures.  Dkt. 106 at 8, 18.

### III. DISCUSSION

**A.      Motion to Strike Declaration of John Cain**

As a preliminary matter, in their reply, Defendants move to strike all evidence referenced by the Declaration of John Cain on grounds that Plaintiffs have not filed any such declaration or exhibits referenced therein.  Dkt. 108 at 8.  The Court agrees that the absence of this declaration and accompanying exhibits renders difficult any assessment of much of the "evidence" that Plaintiffs rely on in their response brief.  Accordingly, the Court grants Defendants' motion to strike all references to Mr. Cain's declaration.  Even so, the Court finds that there are sufficient grounds to dismiss Plaintiffs' inverse condemnation claim even if the Court were to consider the stricken declaration.  The Court will expressly state the admissible evidence it relies upon in considering Defendants' motion.

**B.      Motion to Strike Portions of Donald Emery's Declaration**

Defendants also move to strike "virtually all of the Declaration of Donald P. Emery" on grounds that it contains inadmissible hearsay evidence.  Dkt. 108 at 8.  The Court need not rule on this issue because, as noted below, the alleged hearsay evidence is also inconsequential to this motion's resolution.

**C.      Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

1  fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

2  The moving party is entitled to judgment as a matter of law when the nonmoving party

3  fails to make a sufficient showing on an essential element of a claim in the case on which

4  the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

5  323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

6  could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

7  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

8  present specific, significant probative evidence, not simply "some metaphysical doubt").

9  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

10  if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

11  jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

12  U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

13  626, 630 (9th Cir. 1987).

14       The determination of the existence of a material fact is often a close question. The

15  Court must consider the substantive evidentiary burden that the nonmoving party must

16  meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477

17  U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

18  issues of controversy in favor of the nonmoving party only when the facts specifically

19  attested by that party contradict facts specifically attested by the moving party.  The

20  nonmoving party may not merely state that it will discredit the moving party's evidence

21  at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

22  *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

ORDER - 6

1  nonspecific statements in affidavits are not sufficient, and missing facts will not be

2  presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

3  **D.    Elements of an Inverse Condemnation Claim**

4       Article 1, Section 16 of the Washington State Constitution provides: "No private

5  property shall be taken or damaged for public or private use without just compensation

6  having been first made." Wash. Const. art. I, § 16 (amend. 9).  To prevail on a claim of

7  inverse condemnation, a plaintiff must establish: (1) a taking; (2) without just

8  compensation; (3) of private property; (4) for public use; (5) by a governmental entity

9  that has not instituted formal proceedings.  *See Phillips v. King County*, 136 Wn.2d 946,

10  957 (1998).

11       As the basis for their claim, Plaintiffs allege:

12      The application of the County Code, the [1995] rezoning of the Plaintiffs
land for non-commercial purposes, and for non-agricultural purposes has
13  destroyed a fundamental attribute of property ownership compensable in
accordance with Amendment 9, Art. I, § 16 of the Washington State
14  Constitution . . . . The fair market value of the land has been unfairly and
irrationally reduced by the actions of the Defendants for which plaintiffs
15  demand compensation.

16  Dkt. 48 at 14.  As explained below, Plaintiffs' inverse condemnation claim fails as a

17  matter of law.

18  **E.    Taking**

19       In analyzing a taking claim, the Court asks, first, whether the challenged

20  regulation destroys or derogates a fundamental attribute of property ownership, including

21  the right to possess, to exclude others, to dispose of property, or to make some

22  economically viable use of the property.  *See City of Des Moines v. Gray Bus. LLC*, 130

Wn. App. 600, 611-12 (2005).  If so, there is a per se taking, and just compensation is required.  *Id*. at 612.  If there is no per se taking, then the Court must assess whether a land use regulation constitutes a taking *as applied* to a specific parcel of property.  *See Peste v. Mason County*, 133 Wn. App. 456, 471 (2006).

**1.     Per Se Taking**

Plaintiffs argue that Pierce County's "application of the County Code . . . [and] continued pursuit of criminal charges" after PALS granted non-conforming use rights "destroyed a fundamental attribute of property ownership."  Dkt. 48 at 14.  Specifically, they claim that the 1995 Ordinance and criminal prosecution destroyed Plaintiffs' right to make an economically viable use of their property.  Dkt. 106 at 13-14.  The argument fails for three principal reasons.

First, Plaintiffs have failed to submit evidence that Pierce County's adoption and enforcement of the 1995 Ordinance deprived them of *all* economically viable use of the Property, which is the test for a facial challenge to a land use regulation.  *See Guimont v. Clarke*, 121 Wn.2d 586, 605 (1993) ("[t]he test for a facial challenge is a high one . . . [and] to succeed . . ., the landowner must show that the mere enactment of the statute denies the owner of all economically viable use of the property").  Plaintiffs had the option to apply (and did apply) for a non-conforming use permit for Emery Worldwide Trucking; and, indeed, PALS granted that permit.  Accordingly, the Court is not persuaded by Plaintiffs' assertion that, under the zoning regulation, the only use for their Property is a "public park."  Dkt. 106 at 16-17.  Plaintiffs continue to possess the Property, and they may seek various uses for the Property in compliance with applicable

1    laws.  *See id.* at 606. ("A facial challenge in which the court determines a regulation

2    denies all economically viable use of property should prove to be a relatively rare

3    occurrence.") (internal citations omitted).

4         Second, Plaintiffs' concerns regarding the Pierce County Prosecutor's purported

5    delay in dismissing the criminal action are misplaced.  Contrary to Plaintiffs' assertion, it

6    appears that, even though PALS confirmed non-confirming use rights in February 2006,

7    Mr. Emery appealed that confirmation, thereby delaying the final determination until

8    April 3, 2007.  Dkt. 66 at 10; Dkt. 67-9 at 12-15.  The Pierce County Prosecutor

9    dismissed the criminal charges the next day on April 4, 2007—hardly the delay that

10   Plaintiffs allege.   But even so, Plaintiffs have not provided—and the Court is not aware

11   of—any authority that a delay in dismissing a criminal complaint supports a taking claim.

12   In either case, Plaintiffs cannot show why the named Defendants would be responsible

13   for any delayed dismissal.  Nor can Plaintiffs show how the continued prosecution

14   "directly impacted [their] right to possess and use their property for business purposes,"

15   especially where they had secured a non-conforming use permit by February 2006.[2]

16        Third, even assuming that Defendants had denied a non-conforming use permit,

17   Plaintiffs seem to conflate their right to possess the Property with their contingent right to

18   _____

19        [2] Indeed, the original criminal complaint against Donald and Frances Emery asserted four
     counts, only one of which related to the operation of the trucking business. Dkt. 66-2 at 3-5.
20   The other counts related to alleged illegal wetland activities; illegal clearing, grading, and/or
     moving of earthwork without permit; and failure to obtain a building permit.  *Id.*  The criminal
21   complaint tracked in large part the substance of the various correction notices/orders that PALS
     issued starting in 2004.  *See, e.g.*, Dkt. 48, Exs. 1, 2.  Thus, it appears that the non-conforming
22   use permit that Plaintiffs obtained for the trucking business did not in itself resolve all the issues
     implicated in the criminal complaint.

1   use the Property for any purpose that they desire.  As explained in *City of Des Moines*, a

2   landowner's ability to operate a business on its property is contingent on whether it

3   secures the requisite licenses and complies with the applicable regulations; that ability is

4   ***not*** a part of the "bundle of sticks" that the landowner enjoys as a vested incident of

5   ownership.  160 Wn. App. at 614.  In *City of Des Moines*, the court rejected a regulatory

6   takings claim where the landowner had used the property at issue for a mobile home park

7   for almost 30 years as a legal non-conforming use and the challenged regulation

8   effectively destroyed the landowner's ability to lease property for mobile home use.  *Id*.

9   at 603, 612.  There, the court held that the landowner's ability to lease property for the

10  stated purpose was not a fundamental attribute of ownership.  *Id*. at 613.  The same result

11  applies here—Plaintiffs' ability to operate a trucking business is not a fundamental

12  attribute of ownership.  Therefore, the Court finds that Plaintiffs have failed to establish

13  their claim that the 1995 Ordinance constitutes a per se taking.

14       **2.  As-Applied Taking**

15       Because the Court concludes that the challenged regulation does not destroy any

16  fundamental attributes of property ownership, the Court must next analyze whether there

17  is an as-applied taking, namely whether the challenged regulation goes beyond

18  preventing a public harm to producing a public benefit.  *See Peste*, 133 Wn. App. at 472.

19  On this point, the *Peste* court explains:

20       If the regulation goes beyond preventing a public harm to producing a
         benefit, or if the regulation infringes on (as opposed to destroying) a
21       fundamental attribute of property ownership, we must then decide whether
         the regulation substantially advances a legitimate state interest.  If so, the
22       regulation is subject to an "as applied" takings analysis and we ask whether

1          the adverse economic impact on the affected landowner outweighs
legitimate state interests.  We consider (1) the regulations' economic impact

2          on the property; (2) investment-backed expectations; and (3) the character
of the government action.

3

*Id*. at 472-73.

4

5          Here, the challenged regulation is a zoning change, which Plaintiffs concede

generally falls within Pierce County's police power.  Dkt. 106 at 15; *see Rhod-A-Zalia &*

6

*35th, Inc. v. Snohomish County*, 136 Wn.2d 1, 8 (1998) (zoning ordinances protect the

7

public interest in health, safety, morals and welfare, and as such are an exercise of police

8

power).  Having said that, Plaintiffs ask the Court to conduct a balancing test of

9

individual and state interests and, in so doing, find that a taking occurred because the

10

zoning ordinance caused Plaintiffs to lose a "multi-million dollar business and a family

11

farm that had been in operation for nearly 100 years."  Dkt. 106 at 16.  The Court cannot

12

make the leap of logic on which this allegation rests.

13          As an initial matter, Plaintiffs appear to misconstrue the principles governing

14

nonconforming use rights when they argue that they had a "vested" right to operate their

15

business, notwithstanding the 1995 Ordinance.  "[L]ocal governments have the authority

16

to preserve, regulate and even, within constitutional limitations, terminate nonconforming

17

uses."  *Rhod-A-Zalea,* 136 Wn.2d at 8; *see State ex. rel. Miller*, 40 Wn.2d 216, 220

18

(1952) ("It was not and is not contemplated that preexisting nonconforming uses are to be

19

perpetual.").  "[I]t is counterintuitive to conclude that nonconforming uses which are

20

contrary to public interests, such as health, safety and welfare, would then be exempt

21

from subsequently enacted public health and safety regulations."  *Rhod-A-Zalea*, 136

22

1    Wn.2d at 9.  Thus, whatever concerns Plaintiffs have regarding Defendants' manner of

2    enforcing the 1995 Ordinance, it cannot be said that Defendants had no right to enforce

3    the ordinance given Plaintiffs' alleged prior use.  That is the essence of police power.

4           Even so, in this case, Plaintiffs opted to wait a full year after the first correction

5    notice to apply for a non-conforming use permit, and they elected to relocate their

6    business before the final decision on the non-conforming use application.[3]  *See City of*

7    *Des Moines*, 130 Wn. App. at 614-15 (rejecting an as-applied taking challenge where

8    plaintiff "offer[ed] no proof that its failure to comply with the regulation resulted in any

9    economic loss because the City never denied a . . . permit").  Plaintiffs have failed to

10   submit evidence that raises a material question of fact as to their as-applied taking claim.[4]

11          Therefore, the Court grants Defendants' motion because Plaintiffs have failed to

12   meet the "taking" element of their inverse condemnation claim.

13   **F.    Public Use or Benefit**

14          Even assuming that Plaintiffs could establish that the taking occurred, the inverse

15   condemnation still fails because Plaintiffs have not presented evidence that the taking

16   was for public use or benefit.  In the amended complaint, Plaintiffs allege that Defendants

17   sought to destroy their business in retaliation of their opposition to a Wedgewood

18   

19          [3] While the Court notes Plaintiffs' allegation that they relocated the business because a
     Pierce County employee informed them that their non-conforming use permit would be denied,
20   the Court finds that the allegation, even if supported, does not save Plaintiffs' inverse
     condemnation claim.  Plaintiffs have not provided any authority that suggests otherwise.

21          [4] Many of the arguments that Plaintiffs inject in their response, purportedly in support of
     their inverse condemnation claim, in fact sound in support of other claims that the Court has
22   already resolved.  As noted, the Court previously dismissed eight claims on summary judgment
     on various procedural and substantive grounds that the Ninth Circuit upheld.

1  housing development in 1992 and to force them to sell the land to developers.  Dkt. 48 at

2  6, 9.  Plaintiffs have failed to submit evidence in support of these allegations, and even if

3  such evidence did exist, it is unclear how a forced sale to developers amounts to a public

4  use or benefit as it relates to an inverse condemnation claim.  *See Wallace v. Lewis*

5  *County*, 134 Wn. App. 1, 24 (2006) ("Inherent in any inverse condemnation claim is a

6  nexus between the government's action that damaged private property and its reason for

7  doing so; . . . [T]o sustain an action for inverse condemnation, the plaintiff must show

8  that the government agency acted to further a public benefit, interest or use.").  Therefore,

9  the Court grants Defendants' motion because Plaintiffs have failed to establish that the

10  alleged taking was for a public use or benefit.

11  **G.     Standing**

12        Because the Court grants the Second Motion on the merits, the Court need not

13  decide whether Donald Emery has standing to bring a taking claim where he apparently

14  relinquished his interest in large portions of the Property at issue via a quitclaim deed

15  dated April 2005.

1

**IV. ORDER**

2         Therefore, it is hereby **ORDERED** that Defendants' Second Motion for Summary

3 Judgment (Dkt. 101) is **GRANTED**.  The Clerk is directed to enter judgment for the

4 Defendants.

5         Dated this 15th day of November, 2011.

6

7                            _____

8                            BENJAMIN H. SETTLE
                           United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22